J-S35022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: K.A.Z., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.E.S., A/K/A M.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 887 MDA 2022 |

Appeal from the Order Dated May 10, 2022
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  23 AD 2022

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED:  DECEMBER 16, 2022**

M.E.S., a/k/a M.L., ("Mother") appeals from the order terminating her parental rights as to her minor child, K.A.Z. ("Child").[1] Mother's counsel has filed an ***Anders***[2] brief and a petition to withdraw as counsel. We grant counsel's petition to withdraw and affirm the termination order.

Child was born in February 2019. In February 2020, Dauphin County Social Services for Children & Youth ("Agency") received a referral concerning domestic violence between Mother and Father, substance abuse, and lack of supervision of Child. N.T., 5/9/22, at 5. The Agency had previous involvement

---

[*] Former Justice specially assigned to the Superior Court.

[1] The trial court also terminated the parental rights of Child's father, E.Z., ("Father") and his appeal is pending separately at No. 877 MDA 2022.

[2] ***Anders v. California***, 386 U.S. 738 (1967); ***see also In re V.E.***, 611 A.2d 1267, 1275 (Pa.Super. 1992) (holding ***Anders*** protections apply to appeals of involuntary termination of parental rights).

with the family. *Id.* In July 2020, Child was adjudicated dependent and was placed in the custody of the Agency. *Id.* at 6. Child has remained in the custody of the Agency since that time. *Id.* Child's current foster home is a pre-adoptive home. *Id.* at 32.

In March 2022, the Agency filed petitions for involuntary termination of Mother's and Father's parental rights. A hearing on the petitions was held on May 9, 2022. Despite being served with notice of the hearing,[3] neither parent appeared at the hearing, although each was represented by counsel. *Id.* at 3-4, 10. During the hearing, Mother's counsel received a text message from Mother stating that she had not had a phone for some time and could not get a ride to the hearing. *Id.* at 8. Based on this message, Mother's counsel asked for a continuance. *Id.* The court denied the request and found that the parents had received notice of the hearing based on the publication notice, the caseworker's testimony, and Mother's own admission in her text message to counsel. *Id.* at 12. However, the court agreed to keep the record open to allow Mother and Father a second opportunity to appear the following day. *Id.* at 13-14. Mother and Father's counsel notified Mother and Father that they were ordered to appear in court the next day. N.T., 5/10/22, at 54-55. However, neither parent appeared. *Id.* at 54.

At the hearing, the Agency presented the testimony of its caseworker, Amber Torres. Torres testified that Mother's goals were to cooperate with the

---

[3] Notice of the hearing was made by publication in the Philadelphia Inquirer and the Dauphin County Reporter. *See* Termination H'rg Ex. 37.

Agency, complete a parenting program, maintain sobriety, complete domestic violence treatment, visitation, and complete a psychological evaluation. N.T., 5/9/22, at 15-26.

Torres testified that Mother was not compliant with her goal of cooperating with Agency. *Id.* at 15. She stated that Mother failed to keep the Agency informed of her whereabouts and had recently informed the Agency that she and Father were homeless. *Id.* at 24-25.

Torres said although Mother completed a parenting program, she was unsuccessfully discharged from numerous drug and alcohol programs and failed to consistently provide the Agency with urine screens. *Id.* at 17, 19-20, 25. Torres testified that Mother tested positive for methamphetamines, amphetamines, and marijuana as recently as one month prior to the filing of the termination petition. *Id.* at 19. Torres said that Mother has not taken responsibility for her substance abuse and instead blames the Agency as the reason she uses drugs. *Id.* at 18, 40.

Torres testified that Mother failed to complete domestic violence treatment. *Id.* at 23. She pointed out that Mother filed three protection from abuse complaints against Father, but failed to appear at the hearings, resulting in their dismissal. *Id.* at 22. Mother also minimized any domestic violence between her and Father and claimed that her black eyes were the result of walking into a broomstick. *Id.* at 22-23.

In terms of visitation with Child, Torres testified that although Mother and Father had unsupervised visits for a short period of time, visits were

reverted to supervised in January 2022 following a referral from the Philadelphia Department of Human Services ("DHS") regarding allegations of substance abuse, domestic violence, and lack of supervision of Child. *Id.* at 6-7. DHS reported that the parents were found to have been fighting over a crack pipe in front of Child. *Id.* at 16. The foster parent also reported concerns regarding Child's appearance, demeanor, and care after she returned from an unsupervised weekend visit with the parents. *Id.* at 7. Mother and Father have not visited Child since January 2022. *Id.* at 26.

Torres testified that Mother failed to comply with her final goal of completing a psychological evaluation. *Id.*

Torres stated that although Child has a bond with Mother and Father, she has been in care for over 19 months, and she is very happy in her foster home. *Id.* at 31, 33-34. Torres said that all of Child's needs are being met in her foster home and the foster home is willing to provide permanency for her. *Id.* at 31-33. Torres believed it was in Child's best interest for the parental rights to be terminated and that Child would suffer no detrimental harm. *Id.* at 31.

Foster mother testified that she is willing and able to be a long-term resource for Child. *Id.* at 47. She stated that Child is very loved in the home, and Child has built a relationship with her husband and four other children. *Id.* at 51. Foster mother testified that neither parent has reached out to her to try to communicate with Child but that she would encourage contact

between the parents and Child if the parents were safe, sober, and healthy. *Id.* at 47, 49.

At the conclusion of the termination hearing, the court involuntarily terminated Mother and Father's parental rights. This appeal followed.

Mother's counsel's *Anders* brief identifies one issue:

> Did the trial court abuse its discretion or commit an error of law by determining it was in the [C]hild's best interest to have [M]other's parental rights terminated by clear and convincing evidence despite the court's refusal to provide [M]other with an opportunity to present evidence, on her behalf, at the termination hearing[?]

*Anders* Br. at 4.

Before reviewing the merits of this appeal, we must first determine whether counsel has satisfied the necessary requirements for withdrawing as counsel. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) ("When faced with a purported *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw"). To withdraw pursuant to *Anders*, counsel must: 1) "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous;" 2) furnish a copy of the brief to the client; and 3) advise the client that he or she has the right to retain other counsel or proceed *pro se*. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*).

Additionally, in the *Anders* brief, counsel seeking to withdraw must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Id.* at 355 n.5 (quoting *Commonwealth v. McClendon*, 434 A.2d 1185, 1187 (Pa. 1981)).

We find that counsel has complied with all of the above technical requirements. In his *Anders* brief, counsel has provided a summary of the factual history of the case with citations to the record. Further, counsel's brief identifies one issue that could arguably support the appeal, as well as counsel's assessment of why the appeal is frivolous, with citations to the record. Additionally, counsel served Mother with a copy of the *Anders* brief and advised her of her right to proceed *pro se* or to retain a private attorney to raise any additional points she deemed worthy of this Court's review. *See* Letter, filed 8/24/22.[4] Mother has not responded to counsel's petition to

---

[4] Counsel initially filed a deficient letter, which improperly framed Mother's ability to respond to counsel's motion. On August 18, 2022, this Court directed
*(Footnote Continued Next Page)*

withdraw. As counsel has met the technical requirements of **Anders** and **Santiago**, we will proceed to the issue counsel has identified.

The issue raised in counsel's **Anders** brief claims that Mother was not provided an opportunity to present evidence at the termination hearing. We readily dispose of this issue. The record is clear that Mother failed to appear at the termination hearing and conveniently texted her counsel during the hearing stating that she needed transportation. Mother knew how to contact her caseworker prior to the hearing to request assistance with transportation. Despite Mother's failure to appear, the court was courteous enough to continue the matter until the next day to allow Mother to appear. Mother again failed to appear the next day. Counsel for the Agency stated that the Agency would have assisted in providing transportation but neither parent contacted the Agency. The court gave Mother every opportunity to present evidence on her behalf, but Mother failed to do so. Her claim is without merit.

We now turn to address the court's decision in terminating Mother's parental rights. We review an order involuntarily terminating parental rights for an abuse of discretion. **In re G.M.S.**, 193 A.3d 395, 399 (Pa.Super. 2018). In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re**

_____

counsel to file a letter in compliance with **Commonwealth v. Muzzy**, 141 A.3d 509, 512 (Pa.Super. 2016) (clarifying that counsel's letter to the client shall inform appellant that upon the filing of the petition to withdraw, the client has the immediate right to proceed in the appeal *pro se* or through private counsel). Counsel complied on August 24, 2022.

***T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (quoting ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." ***In re Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***In re Adoption of S.P.***, 47 A.3d at 826.

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. ***In re Adoption of K.C.***, 199 A.3d at 473. Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." ***Id.*** (quoting ***In re Z.S.W.***, 946 A.2d 726, 728-29 (Pa.Super. 2008)).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. ***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

> One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted). To affirm the termination of parental rights, this Court need only affirm the trial court's decision as to any one subsection of section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

The court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), and (8). As only one basis for termination under Section 2511(a) is necessary, we will focus our attention on the court's termination of Mother's parental rights pursuant to Section 2511(a)(8). That subsection states:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8).

Section 2511(a)(8) "sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12-month period has been proven, the court "must next determine whether the conditions that led to the

children's removal continue to exist." *Id.* "As a result, the relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa.Super. 2009). "Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa.Super. 2010).

Here, it is undisputed that, at the time of the filing of the termination petitions, Child had been out of Mother and Father's care in excess of 19 months. Therefore, we next focus our inquiry on whether the conditions that led to Child's removal from parental care continued to exist at the time the court terminated the parental rights.

The record supports the court's finding that the conditions that led to Child's removal from Mother's care continue to exist. The conditions that led to removal were domestic violence, substance abuse, and lack of supervision of Child. The record shows that Mother failed to complete domestic violence treatment. Although Mother filed at least three protection from abuse complaints against Father, she failed to appear at the hearings, resulting in their dismissal. Mother also minimized any domestic violence between her and Father and stated that her black eyes were the result of an accident.

Mother also failed to complete drug and alcohol treatment and continued to test positive for drugs one month before the filing of the termination

petition. It was evident that Mother failed to take any responsibility for her drug use and blamed the Agency as the reason she uses drugs. It was also reported at the termination hearing that Mother and Father were homeless.

After the last visit with the parents, Child was returned to foster mother in a disheveled state. Mother has had no contact with Child since January 2022. Child cannot linger in care waiting for Mother to be in a position to meet Child's needs. This Court has explained:

> We recognize that the application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. . . . However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.

*In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006).

Because Mother failed to remedy the situation that led to Child's removal from her care, and as discussed below, termination of parental rights would best serve the needs and welfare of Child, we find no reasonable basis on which to argue that the trial court improperly concluded that the requirements of Section 2511(a)(8) were satisfied. This issue is frivolous.

Under Section 2511(b), the trial court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the best interest of the child.

*See* 23 Pa.C.S.A. § 2511(b). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa.Super. 2005). The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." ***Id.*** However, the "mere existence of an emotional bond does not preclude the termination of parental rights." ***In re N.A.M.***, 33 A.3d 95, 103 (Pa.Super. 2011). Rather, the trial court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." ***Id.*** (citation and internal quotation marks omitted). The court must also examine any pre-adoptive home and any bond between the child and the foster parents. ***In re T.S.M.***, 71 A.3d at 268.

Here, the court found that termination of Mother's parental rights was in Child's best interests. There was evidence that Child is happy, secure, loved, and thriving in her foster home, and there was testimony that Child would suffer no detrimental harm if Mother's parental rights were terminated. We perceive no reasonable basis on which to challenge the court's conclusion that termination of Mother's parental rights would be in Child's best interests.

To summarize, we find that the issues raised in counsel's ***Anders*** brief are wholly frivolous. Further, after an independent review of the record, we conclude that no other, non-frivolous issue exists. Therefore, we grant counsel's petition to withdraw. Having determined that the appeal is wholly frivolous, we affirm the order terminating Mother's parental rights.

Petition to withdraw as counsel granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/16/2022